# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**KAREN GAMEZ, as Personal Representative of the Estate of Willian A. Gamez, aka Willin Armando Gamez, aka William Armondo Gamez, Deceased, for an on behalf of the survivors of the Estate of Willian A. Gamez,**

**Plaintiff,**

**-vs-** **Case No. 6:06-cv-716-Orl-22DAB**

**BREVARD COUNTY, FLORIDA; BREVARD COUNTY SHERIFF JACK PARKER; LIEUTENANT MICHAEL C. BROWN; SERGEANT STEPHEN A. FEASTER; SERGEANT BRIAN K. SEELEY; CORPORAL FREDERICK L. ABBEY; PRISON HEALTH SERVICES, INC.; CIRCLES OF CARE, INC.; AMY DIAMOND; JOHN DOE I; JOHN DOE II; and JOHN DOE III;**

**Defendants.**

---

## REPORT AND RECOMMENDATION

### TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **MOTION TO DISMISS AMENDED COMPLAINT (DEFENDANTS ABBEY, PARKER, BROWN, FEASTER AND SEELEY (Doc. No. 34)** |
| **FILED:** | **June 22, 2006** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

**MOTION:** **MOTION TO DISMISS AMENDED COMPLAINT (DEFENDANTS PRISON HEALTH SERVICES, INC. AND JOHN DOE (Doc. No. 36)**

**FILED:** **June 23, 2006**

---

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

**MOTION:** **MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (BREVARD COUNTY) (Doc. No. 37)**

**FILED:** **June 26, 2006**

---

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

**MOTION:** **AMENDED MOTION TO DISMISS AMENDED COMPLAINT (CIRCLES OF CARE, AMY DIAMOND, JOHN DOE) (Doc. No. 39)**

**FILED:** **June 28, 2006**

---

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

According to the allegations of the Amended Complaint, this is a civil action for wrongful death, negligence, and violations of civil rights, arising out of the death of Plaintiff's decedent, Willian A. Gamez, who hung himself at the Brevard County Detention Center on March 21, 2004. Gamez was a convicted felon at the time of his suicide, awaiting sentencing which was scheduled for May 2004 (Amended Complaint at ¶20). Plaintiff alleges fourteen counts against the various defendants, including claims for violation of 42 U.S.C. § 1983 and § 1985, state law wrongful death claims and state law tort claims, asserting "reckless indifference." All of the Defendants have moved

to dismiss, and Plaintiffs have filed responsive papers (Doc. Nos. 44, 46, 48, and 49). The matters are now ripe for review.

## *BACKGROUND AND PERTINENT FACTS*

As alleged by Plaintiff, Brevard County is a political subdivision of the State of Florida, responsible for funding the Brevard County Detention Facility ("the Facility"), and for providing medical care to those incarcerated there. At all relevant times, Defendant Parker was the Sheriff of the County, responsible for managing and operating the Facility. Prison Health Services, Inc. ("PHS") had a contract "with the County and/or Parker and/or the [Facility]" to provide medical care for the inmates. Circles of Care, Inc. ("Circles") also had a contractual relationship with the County and/or Parker. Defendants Brown, Feaster, Seeley, and Abbey ("the Officers") are employees of Parker. Plaintiff does not specifically identify Defendant Amy Diamond, but she is apparently a psychiatrist with Circles.

According to the Amended Complaint, Gamez was incarcerated at the facility on March 21, 2004, after being convicted of a felony. After the conviction, "an [unidentified] employee of the Brevard County Clerk of Court called the Brevard County Detention Center to inform them [also unidentified] that she believed that Decedent would hang or harm himself due to his demeanor and actions after being convicted." (Amended Complaint at ¶ 20). That very day, Gamez did hang himself in the 400 pod, "C" Cellblock, Cell 441, via a bed sheet tied to a window grate. The Amended Complaint alleges that these implements were "ultra hazardous" and Parker had previously been warned of this condition by Gene Miller.[1] Officers [unidentified] attempted to revive Gamez by performing CPR, but were unable to do so.

---

[1]Plaintiff does not otherwise identify or explain who Gene Miller is.

It is alleged that on March 21, 2004, a barbecue was held for "squad members" at the Facility. Plaintiff alleges that the pod was not adequately monitored prior to Gamez' death, as "the officers [not otherwise identified] that should have been present in the area were not available to properly monitor Gamez" as they were "preoccupied with attending the barbecue function." (Amended Complaint at ¶88).

Plaintiff asserts generally that the Defendants have a policy of "ignoring the serious mental health needs of inmates," and that the Facility has staffing problems and shortages. Plaintiff alleges that inmates who are identified as suicidal are housed in dark Bubble areas, that are confined and overcrowded, without a mattress, for six weeks at a time. In addition to allegations of overcrowding, Plaintiff alleges that the Defendants fail to provide adequate mental health services, including necessary inpatient and residential mental health programs, and impose punishments which aggravate the mental illness of prisoners.[2]

## ***CLAIMS***

***42 U.S.C. § 1983***
**Counts I-IV (Parker), VI (County), VIII (PHS), X (Circles), and XII (the Officers)**

Plaintiff alleges that, in violation of the Fourth and Fourteenth Amendments, these Defendants: (1) failed to properly train the administration, officers and deputies at the Facility to identify suicidal inmates and to take appropriate action to prevent inmates from committing suicide; (2) failed to provide an adequate number of competent mental health professionals and staff to deal with the rising population; (3) failed to provide safe housing to inmates that had been identified as suicidal, and failed to remedy ultra-hazardous conditions; (4) failed to remedy the overcrowded conditions at the Facility;

---

[2]Plaintiff does not allege that Gamez was subject to any such punishment or housed in any such Bubble area.

(5) failed to provide adequate mental health care and/or medical care for inmates; and (6) failed to properly house and monitor Gamez, and failed to prevent his suicide. Plaintiff alleges that these failures are the result of a "custom, policy or practice" of deliberate indifference, and that these actions resulted in injuries that caused Gamez' death.

These Defendants move to dismiss these claims, contending *inter alia* that (1) Plaintiff fails to state a claim of deliberate indifference under Section 1983; (2) Plaintiff fails to state a claim of municipal liability; and (3) the Fourth Amendment claims are not viable under the facts of this case. Parker and the Officers also argue that they are entitled to qualified immunity.

***Wrongful Death***
**Counts V (Parker), VII (the County), XIII (the Officers)**

Plaintiff alleges that these Defendants had duties to provide medical care to Gamez during his incarceration, to prevent him from committing suicide, and a duty to provide a jail that was not overcrowded "as to make it less likely that Gamez would want to commit suicide" (Allegation 59), but that the Defendants breached these duties by negligently failing to provide adequate mental health treatment to him "when it was obvious to the correctional officers and medical staff . . ." that he was in need of medical attention, and by keeping Gamez in the general population instead of on suicide watch, in an unmonitored and overcrowded pod.

These Defendants move to dismiss these claims, arguing that Plaintiff has failed to state a claim for wrongful death. The County argues that it is protected by sovereign immunity from this claim because decisions concerning prison funding and improvements are protected decisions, and the underlying employee actions for which the Plaintiff seeks to hold the County vicariously liable are acts for which the County may not be held liable.

***Reckless Indifference* - Counts IX (PHS) and XI (Circles)**

Plaintiff alleges that PHS and Circles failed to provide adequate medical and mental health care to inmates at the Facility, and failed to properly identify and diagnose those inmates with mental health problems, and this conduct caused injuries which caused Gamez's death. Plaintiff further alleges that PHS' and Circles' conduct was deliberately indifferent, willful and intentional.[3]

PHS and Circles assert that these claims should be dismissed because the Plaintiff failed to demonstrate that the statutory conditions precedent to filing a claim for medical malpractice has been met.

***42 U.S.C. § 1985***
**Count XIV - (all Defendants)**

Plaintiff alleges here that, in violation of 42 U.S.C. § 1985, these Defendants conspired to violate Gamez's Fourteenth Amendment rights, and, acting in concert, failed to provide adequate housing, testing, monitoring, training, mental health professionals, medication, failed to remedy known dangers at the Facility, and failed to otherwise prevent and provide for suicidal inmates at the Facility. Plaintiff further alleges that these Defendants had a policy, custom or practice of failing to provide proper and safe housing to those inmates that had been identified as suicidal, which failure led to the suicide.

Defendants have moved to dismiss Count XIV, arguing that the Plaintiffs have failed to state a § 1985 claim in that it is not alleged that Gamez was a member of a protected class, and Count XIV impermissibly commingles allegations against all of the Defendants in a single count.

---

[3]Interestingly, Plaintiff does not allege that either of these two providers ever evaluated or treated Plaintiff. Rather, Plaintiff alleges that PHS "failed to provide adequate mental health care, and or medical care to inmates" and "failed to properly diagnose and identify those individuals with mental health problems." (Amended Complaint at page 26).

## *STANDARD OF REVIEW*

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). In ruling on a motion to dismiss, this Court must view the complaint in the light most favorable to the Plaintiff, *Cannon v. Macon County*, 1 F.3d 1558, 1565 (11th Cir. 1993), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). "However, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

## *ISSUES AND ANALYSIS*

This case is essentially indistinguishable from another case pending in this division: *Smith ex rel Ashley v. Brevard County, et al;* Case No. 6:06-cv-715-Orl-31JGG. *Smith,* filed immediately prior to the filing of the instant case by the same counsel representing this Plaintiff, is an action arising out of the suicide by hanging of inmate Carl Ashley at the same Facility, on December 29, 2003.[4] As here, the plaintiff in *Smith* sued the County, the Sheriff, PHS, Circles, Amy Diamond, and various correctional officers and John Does. The causes of action are identical to those alleged here.[5] Moreover, the defendants in *Smith* filed motions to dismiss that are the same in all relevant respects to those filed here. In a thorough and thoughtful opinion filed August 14, 2006, Judge Presnell dismissed Smith's Amended Complaint in its entirety. (Case No: 6:06cv715-31JGG; Doc. No. 54, as

---

[4]Plaintiff Mae Smith sued as Personal Representative of the Estate of Carl Ashley, for and on behalf of the survivors.

[5]Note that there appears to be yet another similar case: *Rolle, et al v. Brevard County, et al,* Case No. 6:06-cv-714-19JGG.

amended by Doc. No. 60). As the Smith Amended Complaint is identical in all relevant aspects (save for the identity of the decedent), and the motions to dismiss filed here reprise the contentions made in *Smith,* this Court **respectfully recommends** that the instant motions be **granted**, for the reasons ably expressed in *Smith v. Brevard County*, *et al.*, as summarized below.

**Section 1983 and Inmate Suicide**

**Counts I-IV (Parker), VI (County), VIII (PHS), X (Circles), and XII (the Officers)**

In order to properly address the alleged constitutional violations, Gamez's status at the time of the incident must be clarified. Gamez was a convicted felon at the time of his suicide, but was yet to be sentenced. If Gamez is therefore considered to be a pretrial detainee during the entire period of time that the events described in the amended compliant transpired, Plaintiff's claim must be analyzed under the Fourteenth Amendment, rather than the Eighth Amendment. *See Bell v. Wolfish,* 441 U.S. 520, 535 (1979). However, "in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986). As the Eleventh Circuit has stated in the context of a jail suicide case:

> [w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial because in a prisoner suicide case, to prevail under section 1983 for violation of substantive rights, under either the eighth or fourteenth amendment, the plaintiff must show that the jail official [defendant] displayed deliberate indifference to the prisoner's taking of his own life.

*Tittle v. Jefferson County Comm'n*, 10 F.3d 1535, 1539 (11th Cir. 1994) (internal citation and quotations omitted).

As recognized in *Smith*, to prevail in a Section 1983 claim for a violation of substantive rights under the Fourteenth Amendment, "the plaintiff must show that the jail official displayed deliberate indifference to the prisoner's taking of his own life." *Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005) (internal citations and quotations omitted). To establish deliberate indifference, the plaintiff must show that the defendant had "(1) subjective knowledge of a risk of serious harm; and (2) disregarded that risk; (3) by conduct that is more than mere negligence." *Id*. (internal citations, quotations and punctuation omitted).

> [I]n a prison suicide case, deliberate indifference requires that the defendant deliberately disregard a *strong likelihood* rather than a mere possibility that the self-infliction of harm will occur. The mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners.

*Cook*, *supra*, 402 F. 3d at 1115 (internal citations omitted).

> Deliberate indifference, in the jail suicide context, is not a question of the defendant's indifference to suicidal inmates or suicide indicators generally, but rather it is a question of whether a defendant was deliberately indifferent to *an individual's* mental condition and the likely consequences of that condition.

*Cook*, 402 F.3d at 1117 (internal citation and quotation omitted) (emphasis in original).

Thus, absent knowledge of the particular inmate's suicidal tendencies, the "failure to prevent suicide has never been held to constitute deliberate indifference." *Cook*, 402 F.3d at 1117 (internal citation and quotation omitted).

As in *Smith*, the section 1983 claims against these Defendants (Counts I-IV (Parker), VI (County), VIII (PHS), X (Circles), and XII (the Officers), allege that they failed to: provide adequate staff and train that staff; provide adequate mental health professionals; properly monitor potentially suicidal inmates; provide safe housing for suicidal inmates; provide adequate medical care and mental

health care; and prevent Gamez's suicide. Plaintiff alleges that all of these failures led to Gamez's suicide. All of these allegations are made in the context of a policy, custom or practice.[6]

Plaintiff's claims of deliberate indifference against these Defendants are facially deficient because at no time is it alleged that any of these Defendants had knowledge that Gamez was at risk to commit suicide. Indeed, although Plaintiff alleges that it was "obvious" that Gamez "was in desperate need of medical attention," Plaintiff alleges no facts sufficient to support this conclusion. The only factual allegation on point avers that *someone* from the Clerk's office called *someone* at the Facility to inform "them" that she *believed* that Gamez would hang or harm himself "due to his demeanor and actions after being convicted." (Allegation 20). Even if the Court were inclined to impute knowledge of this conversation to these Defendants (which is not alleged and which is highly unlikely, given the time period at issue), this is insufficient to demonstrate that Defendants had subjective knowledge that there was a strong likelihood (rather than a mere possibility) that Gamez would commit suicide. There is no allegation that the unknown clerk's office employee was trained in evaluating the medical needs or mental status of persons sufficient to interpret Gamez's "demeanor and actions," nor is there any allegation that Gamez communicated his desire to commit suicide to anyone at the Facility. *See Cook*, *supra*, 402 F.3d at 1116. ("Cook has presented no evidence that Tessier had previously attempted suicide or had ever been considered a suicide risk.") While such a telephone call might be grounds for prompt investigation into the *possibility* of suicidal ideation,

[6]As in *Smith*, Plaintiff fails to specify whether Parker is sued in his official or individual capacity.

it is inadequate to establish a "strong likelihood" that Gamez would harm himself, and thus, fails to meet the standard of reckless indifference as a matter of law.[7]

Moreover, even if the Amended Complaint did set forth a cause of action, and these defendants are sued in their individual capacities, Parker and the Officers are entitled to qualified immunity, for the reasons set forth in *Smith*.[8]

To the extent Counts I through IV are against Parker in his official capacity, the counts should be **dismissed, without prejudice.** To the extent Parker and the Officers are sued in their individual capacities, they are entitled to qualified immunity, and any claims against Parker in his individual capacity, or against the Officers (Count XII) should be **dismissed, with prejudice.** Counts VI, VIII, and X should be **dismissed, without prejudice.**

**Wrongful Death**

**(Count V - Parker, Count VII - the County, Count XIII -the Officers)**

The County (Count VII) notes that it is entitled to statutory immunity, in that a state subdivision may not be liable for actions "committed in bad faith or malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *See* §768.28(9)(a), *Florida Statutes*. As noted in *Smith*, the phrase "wanton and willful" "connotes conduct much more reprehensible and unacceptable than mere intentional conduct," *Maybin v. Thompson*, 514 So. 2d 1129, 1131 (Fla. 2d DCA 1987) (internal citation omitted), and has been equated with reckless conduct. *Samedi v. Miami-Dade County*, 134 F. Supp. 2d 1320, 1354 (S.D. Fla. 2001); *Williams v.*

---

[7]The Court agrees with Judge Presnell that the § 1983 counts are deficient in numerous other ways, as well. *See Smith*, Doc. No. 54, footnote 12.

[8]*Smith*, Doc. No. 54 at footnote 13.

*City of Minneola*, 619 So. 2d 983, 986 (Fla. 5th DCA 1993). Here, Plaintiff repeatedly alleges that Defendants were "deliberately indifferent," and describes the conduct as "willful and intentional."[9] This characterization falls within the definition of "reckless" or "willful and wanton." *Smith, citing Farmer v. Brennan*, 511 U.S. 825, 836 (1994) ("It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."). Therefore, the County is protected by sovereign immunity from the claim in Count VII, and Count VII should be dismissed.

As for Parker (Count V) and the Officers (XIII), they reiterate the same arguments that they made in *Smith.* Parker argues that the Plaintiffs have failed to state a claim for wrongful death because any duty he may have had did not extend to preventing a suicide that was not reasonably foreseeable. The Officers argue that the Plaintiff offers nothing other than conclusory allegations regarding their alleged willful and intentional conduct, and thus have failed to provide sufficient allegations to support their wrongful death claim. These arguments have merit, and Plaintiff has done nothing other than repeat the allegations of the Amended Complaint *verbatim* in her Response. Accordingly, Count V against Parker, and Count XIII against the Officers should be dismissed.

**Reckless Indifference**

**(Count IX - PHS, Count XI - Circles)**

PHS (Count IX) and Circles (Count XI) contend that these claims must be dismissed, as they are claims for medical malpractice or negligence, and, as such, must comply with the pre-suit notice

---

[9] Plaintiff re-alleges and incorporates these allegations by reference into the wrongful death counts.

requirements of Florida Statutes, § 766.106(2)[10] and the corroborating affidavit requirement of § 766.203(2).[11] As noted in *Smith,* these requirements "must be met in order to maintain a medical malpractice or medical negligence action against a health care provider." *J.B. v. Sacred Heart Hosp. of Pensacola*, 635 So. 2d 945 (Fla. 1994). Plaintiff argues that chapter 766 does not apply here because

they have brought a claim of "common law reckless indifference," which differs from medical malpractice. This Court disagrees. As recognized in Smith:

> "It is up to the court to decide from the allegations in the complaint whether the claim arises out of the rendering of, or the failure to render, medical care or services." *Foshee v. Health Mgmt. Assocs.*, 675 So. 2d 957, 959 (Fla. 5th DCA 1996) (internal citation and quotation omitted). This inquiry is "fundamentally fact-dependent," and an "inquiry to determine the applicability of the pre-suit process should begin with the statutory definition of a claim for medical negligence." *Blom v. Adventist Health Sys./Sunbelt, Inc.*, 911 So. 2d 211, 213-14 (Fla. 5th DCA 2005) (internal citation and quotation omitted). Section 766.106 defines a claim for medical negligence or medical malpractice as "a claim arising out of the rendering of, or the failure to render, medical care or services." F.S. § 766.106(1)(a). According to Florida Statute section 766.202, "medical negligence" means "medical malpractice, whether grounded in tort or in contract." F.S. § 766.202(7). Reading sections 766.106 and 766.202 together, the Florida Supreme Court has determined that "chapter 766's notice and presuit screening requirements apply to claims that arise out of the rendering of, or the failure to render, medical care or services." *J.B.*, 635 So. 2d at 949. Thus, the pre-suit requirements of chapter 766 must be met when a plaintiff suffers an injury "during the course of

[10]Section 766.106(2) provides, in relevant part:

After completion of presuit investigation pursuant to s. 766.203(2) and prior to filing a complaint for medical negligence, a claimant shall notify each prospective defendant by certified mail, return receipt requested, of intent to initiate litigation for medical negligence. . . . F.S. § 766.106(2).

[11]Section 766.203(2) provides, in relevant part:

Prior to issuing notification of intent to initiate medical negligence litigation pursuant to s. 766.106, the claimant shall conduct an investigation to ascertain that there are reasonable grounds to believe that:
(a) Any named defendant in the litigation was negligent in the care or treatment of the claimant; and
(b) Such negligence resulted in injury to the claimant.
Corroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written medical expert opinion from a medical expert . . . at the time the notice of intent to initiate litigation is mailed . . . .
F.S. § 766.203(2).

> treatment for the patient's health." *Puentes v. Tenet Hialeah Healthsystem*, 843 So. 2d 356, 357 (Fla. 3rd DCA 2003).

*Smith*, Doc. no. 54 at 15-16.

Courts have held that the application of chapter 766 is not limited solely to those actions defined as "negligence." *Paulk v. Nat'l Med. Enters., Inc.*, 679 So. 2d 1289, 1290 n.3 (Fla. 4th DCA 1996) ("Even though chapter 766 uses the term 'negligence' or 'medical negligence' in several of its provisions, we do not believe that the legislature intended to limit coverage of the statutory scheme to only those actions framed in terms of negligence. It seems to us that the intent expressed in the text is to extend the statute whenever the medical judgment of the provider is being challenged."); *Tunner v. Foss*, 655 So. 2d 1151, 1152 (Fla. 5th DCA 1995) (claim that as a result of intentional, willful and fraudulent deception, the plaintiff did not receive adequate medical care fell within the umbrella of medical malpractice statute; plaintiff alleged that defendant intentionally deprived him of medical care and breached a fiduciary duty owed to plaintiff, which were intentional tort and contract claims, and medical negligence includes claims for medical malpractice whether grounded in tort or contract).

Here, the Amended Complaint alleges that PHS, John Doe II, Circles, and Amy Diamond, "failed to provide adequate mental health care, and or medical care" to inmates at the Facility (Allegations 100 and 112); and "specifically" "failed to properly diagnose" those individuals with mental health problems (Allegations 101 and 113); and Gamez was injured thereby. This falls squarely within the above definitions of medical malpractice or negligence, and the claims are thus subject to the Chapter 766 requirements. As it is undisputed that Plaintiff has not alleged compliance with these requirements, and has not, in fact, complied, the Amended Complaint should be dismissed, as to these counts.

As noted in *Smith*, Plaintiff is entitled to cure this defect, provided that the two-year statute of limitations has not run. However, in this case, more than two years has passed since the accrual of this cause of action,[12] and thus Counts IX and XI are subject to dismissal with prejudice for failure to comply with the statutory pre-suit requirements for medical malpractice claims. *Clark v. Sarasota County Public Hosp. Bd.*, 65 F. Supp. 2d 1308, 1312 (M.D. Fla. 1998).

**Section 1985**

**All Defendants (Count XIV)**

As stated in *Smith*, the elements of a cause of action under 42 U.S.C. § 1985(3) are: "(1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States" *citing Childree v. UAP/GA AG Chem., Inc.*, 92 F.3d 1140, 1146-47 (11th Cir. 1996). The second element in that list "requires a showing of some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Childree*, 92 F.3d at 1147; *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1370 n.11 (11th Cir. 1998) (claim that does "not allege that the defendants' actions stemmed from racial or class-based animus . . . can not satisfy the essential elements of a § 1985 conspiracy action").

There are two kinds of classes protected by Section 1985(3): (1) classes having common characteristics of an inherent nature - - *i.e.*, those kinds of classes offered special protection under the equal protection clause, and (2) classes that Congress was trying to protect when it enacted the Ku

---

[12]Gamez hung himself on March 21, 2004.

Klux Klan Act. *Childree*, 92 F.3d at 1147. Prisoners are "neither a class offered special protection under the equal protection clause nor a class that Congress intended to protect when it enacted § 1985(3)." *Farese v. Scherer*, 342 F.3d 1223, 1229 n.7 (11th Cir. 2003).

Applied here, Plaintiff completely fails to allege that the "conspiracy" was motivated by any invidious discriminatory intent toward a protected class of which Gamez was a member. Rather, Plaintiff contends (without support) that Gamez does not have to be in a protected class of individuals, and makes the *identical* two-paragraph argument here (save for substitution of the decedent's name) that Judge Presnell soundly rejected in *Smith.* See *Smith*, Doc. No. 54 at footnote 24. This Court should likewise dismiss this count.

## CONCLUSION

For the reasons set forth above, the Amended Complaint is untenable. It is therefore **respectfully recommended** that the motions to dismiss be **GRANTED,** and the Amended Complaint (Doc. No. 31) be **dismissed.** Counts IX, XI, XII and XIV should be dismissed, with prejudice. Plaintiff should be granted twenty days from the date of any Order adopting and approving this report and recommendation to file a second amended complaint with respect to the remaining claims.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on September 6, 2006.

David A. Baker

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy