# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**KAREN GAMEZ, as Personal Representative of the Estate of Willian A. Gamez, aka Willin Armando Gamez, aka William Armondo Gamez, Deceased, for an on behalf of the survivors of the Estate of Willian A. Gamez,**

                     **Plaintiff,**

**-vs-**                                      **Case No. 6:06-cv-716-Orl-22DAB**

**BREVARD COUNTY, FLORIDA; BREVARD COUNTY SHERIFF JACK PARKER; LIEUTENANT MICHAEL C. BROWN; SERGEANT STEPHEN A. FEASTER; SERGEANT BRIAN K. SEELEY; CORPORAL FREDERICK L. ABBEY; PRISON HEALTH SERVICES, INC.; CIRCLES OF CARE, INC.; AMY DIAMOND; JOHN DOE I; JOHN DOE II; and JOHN DOE III;**

                     **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      This cause came on for consideration without oral argument on the following motions filed herein:

> **MOTION:**    **MOTION TO DISMISS SECOND AMENDED COMPLAINT (SHERIFF AND OFFICERS) (Doc. No. 63)**
>
> **FILED:**    **October 20, 2006**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**, **in part and DENIED, in part.**

> **MOTION:** **MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (CIRCLES OF CARE) (Doc. No. 64)**
>
> **FILED:** **October 23, 2006**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

> **MOTION:** **MOTION TO DISMISS SECOND AMENDED COMPLAINT (PHS) (Doc. No. 65)**
>
> **FILED:** **October 25, 2006**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

> **MOTION:** **MOTION TO DISMISS SECOND AMENDED COMPLAINT (BREVARD COUNTY) (Doc. No. 66)**
>
> **FILED:** **October 26, 2006**
> _____
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED**.

This is an action for alleged civil rights violations arising out of the death of Plaintiff's decedent, Willian A. Gamez, who hung himself at the Brevard County Detention Center on March 21, 2004. Gamez was a convicted felon at the time of his suicide, awaiting sentencing which was scheduled for May 2004 (Second Amended Complaint at ¶20). This Court adopted a prior Report and Recommendation, dismissing the earlier Amended Complaint (containing federal and state law claims) and directing the filing of a Second Amended Complaint ("the SAC"), limited to only the claims under 42 U.S.C. § 1983 that had not been dismissed with prejudice (Doc. No. 58). Plaintiff has filed the SAC (Doc. No. 62) and the various Defendants have again moved to dismiss.

### *STANDARD OF REVIEW*

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In ruling on a motion to dismiss, this Court must view the complaint in the light most favorable to the Plaintiff, *Cannon v. Macon County*, 1 F.3d 1558, 1565 (11th Cir. 1993), and must limit its consideration to the pleadings and any exhibits attached thereto. Fed. R. Civ. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). "However, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

### *ISSUES AND ANALYSIS*

Initially, the Court notes that despite prior chiding by this Court and others,[1] Plaintiff's counsel continues to present a claim that is vague and muddled, greatly complicating the Court's analysis of the serious issues presented. For example, it is clear that counsel has "cut and pasted" allegations of other actions into this complaint, as evidenced by Allegation 31, which notes that "Ashley was sleeping on the floor." The Court assumes this is an allegation taken from the pleadings in *Smith ex rel Ashley v. Brevard County, et al;* Case No. 6:06-cv-715-Orl-31JGG. Additionally, the pleading continues to assert wrongful death and negligence claims (*e.g.*, Allegation 10) despite the prior ruling limiting Plaintiff to civil rights claims, and names Mike Harris as a Defendant, but pleads no counts against him. Most importantly, the pleading fails to provide a much-needed timeline with which to evaluate the allegations. Plaintiff was allegedly

---

[1] *See* Judge Presnell's comments in Case No. 6:06cv715-31JGG, *Smith, ex rel Ashley, v. Brevard County, et al,* Doc. No. 54 at footnote 4.

convicted, transmitted to the Facility and committed suicide, all on the same day. Although Plaintiff alleges, in conclusory fashion, that the Facility received one (or more) phone calls expressing concern about Plaintiff, the pleading does not provide any specific information as to *when* the call or calls were made and *to whom* the calls were made and, most importantly, what happened next and *when*.[2] Although the Court construes a complaint liberally on a motion to dismiss, this does not mean that the Court is at liberty to supply grounds not pled or reasonably inferred from the short and plain statement required. Counsel's lack of care in crafting the SAC has made the task of evaluating the motions needlessly difficult. The tragic circumstances of the case and the seriousness fo the claims make this lack of care all the more inexcusable.

*The Nature of the Claims*

Although it is not altogether clear, the style of the case indicates that Plaintiff is suing Brevard County ("the County"), the Brevard County Sheriff (in his official capacity as a "political subdivision" of the County), Prison Health Services ("PHS" -- a state actor due to its contractual relationship with the County and/or Sheriff), Circles of Care ("Circles" -- also alleged to be a state actor due to contract), various individual employees of the Sheriff's Office, sued in their official capacities ("the Officers"), and Mike Harris, alleged to be a psychiatrist and an employee of Circles, purportedly sued in his official capacity ("Harris").[3] To the extent the individuals are all sued in their official capacity as alleged agents of the County or Sheriff or one of its contractors, the claims are duplicative of the claims against the entities, and should therefore be **dismissed.** *See*

---

[2] Similarly, the pleading goes to great lengths to discuss an allegedly unauthorized bar-b-que at the Facility. Absent is any allegation as to the causal connection between this event and the suicide, other than the fact that they both occurred on the same day.

[3] As noted above, the SAC includes no count against Harris; it does, however, purport to seek damages against Amy Diamond, who is *not* named as a Defendant in either the case style nor the "Parties" section of the SAC.

*Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1115 (11th Cir. 2005) ("When, as here, the defendant is the county sheriff, the suit is effectively an action against the governmental entity he represents -- in this case, [the] County."); *Snow v. City of Citronelle, Ala.*, 420 F.3d 1262, 1270 (11th Cir. 2005) ("suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent"). The only claims arguably presented by the SAC are against the Sheriff, the County, PHS and Circles.

*The Applicable Law*

"To impose Section 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th. Cir. 2004), *citing City of Canton v. Harris,* 489 U.S. 378 at 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). A municipality may not be held liable under Section 1983 on a theory of *respondeat superior. City of Canton,* 489 U.S. at 385. Liability attaches only "when the execution of the government's policy or custom inflicts the injury"; thus, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Snow,* 420 F.3d at 1271 (internal citations omitted).

As recognized by the undersigned in the prior Report, in the context of a civil rights suit arising from a jail suicide, "the plaintiff must show that the jail official displayed deliberate indifference to the prisoner's taking of his own life." *Cook*, 402 F.3d at 1115 (internal citations and quotations omitted). To establish deliberate indifference, the plaintiff must show that the defendant had "(1) subjective knowledge of a risk of serious harm; and (2) disregarded that risk; (3) by

conduct that is more than mere negligence." *Id*. (internal citations, quotations and punctuation omitted).

> [I]n a prison suicide case, deliberate indifference requires that the defendant deliberately disregard a *strong likelihood* rather than a mere possibility that the self-infliction of harm will occur. The mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners.

*Cook, supra,* 402 F. 3d at 1115 (internal citations omitted). Moreover, "[d]eliberate indifference, in the jail suicide context, is not a question of the defendant's indifference to suicidal inmates or suicide indicators generally, but rather it is a question of whether a defendant was deliberately indifferent to *an individual's* mental condition and the likely consequences of that condition." *Cook*, 402 F.3d at 1117 (internal citation and quotation omitted) (emphasis in original). Thus, absent knowledge of the particular inmate's suicidal tendencies, the "failure to prevent suicide has never been held to constitute deliberate indifference." *Cook*, 402 F.3d at 1117 (internal citation and quotation omitted).

Here, as in the prior Amended Complaint and as in other actions brought by this counsel pending in this court, the Section 1983 claims against these Defendants allege that they failed to: provide adequate staff and train that staff; provide adequate mental health professionals; properly monitor potentially suicidal inmates; provide safe housing for suicidal inmates; provide adequate medical care and mental health care; and prevent suicide. Plaintiff alleges that all of these failures led to Gamez's suicide. All of these allegations are made in the context of a policy, custom or practice. This version of the complaint, however, adds additional, more particularized assertions which purport to support an allegation that these Defendants had knowledge of Gamez's suicidal tendencies. Specifically, Plaintiff adds the following particularized allegations:

20. WILLIAN A. GAMEZ was incarcerated at the Brevard County Detention Center on March 21, 2004, after being convicted of a felony, but before the imposition of his sentence which was set for May 2004, and therefore had the status of a pretrial detainee. Immediately after the jury found WILLIAM [sic]GAMEZ guilty, Monica Levsen, the Clerk of Court, working at WILLIAN GAMEZ'S trial, called the Brevard County Detention Center and inform [sic] an employee at the jail that GAMEZ would hang or harm himself. Among those who had knowledge of this call were, including but not limited to, Sgt. Patty Tipton, and Officer Sandra McKinney, whom are both law enforcement officers working at the jail, and are agents and/or employees of PARKER, Loren Dixon, who works at the jail and is an agent and/or employee of both PARKER and COUNTY, MIKE HARRIS, who is a counselor, and employee, and/or agent of CIRCLES. The warning given by Monica Levsen is information that must be imputed to PARKER, the COUNTY, PHS, and CIRCLES, and to the other defendants and their agents and/or employees.  Defendants, COUNTY, SHERIFF, PHS, CIRCLES OF CARE, BROWN, FEASTER, SEELEY, ABBEY, SERGEANT PATTY TIPTON, OFFICER SANDRA MCKINNEY, LOREN DIXON, and MIKE HARRIS and their fellow employees and/or agents knew or should have known of GAMEZ'S suicidal tendencies and any knowledge of GAMEZ'S suicidal tendencies by and of the above named employees should be imputed to PHS, CIRCLES, COUNTY and SHERIFF, and other named Defendants.

21. KAREN GAMEZ, the wife of the deceased WILLIAN GAMEZ, telephoned an employee at the Brevard County Detention Facility and stated that she believed that WILLIAN GAMEZ would hurt, injure, or kill himself.  This information should be imputed to the SHERIFF, the COUNTY, PHS, and CIRCLES OF CARE, their agents and employees, and to other defendants and their agents and employees. Defendants, Brevard COUNTY, SHERIFF, PHS, CIRCLES OF CARE, AMY DIAMOND, BROWN, FEASTER, SEELEY, ABBEY and their fellow employees and/or agents knew or should have known of GAMEZ'S suicidal tendencies and any knowledge of GAMEZ'S suicidal tendencies by and of the above named employees should be imputed to PHS, CIRCLE OF CARE, COUNTY and SHERIFF, and other named Defendants.

22. The warnings of suicidal tendencies by KAREN GOMEZ [sic] and Monica Levsen were ignored by PARKER, his employers [sic?] and/or agents at the jail, as well as any other defendant previously listed, and the said failed to take any action in response [] to the knowledge of suicidal tendencies.

23. After the aforesaid warnings, on March 21, 2004, WILLIAN A. GAMEZ, did hang himself at the Brevard County Detention Facility in the 400 Pod, "C" Cellblock, Cell 441 by utilizing a bed sheet tied to a window grate to take his life by asphyxiation. * * *"

The Court reviews the motions to dismiss, by category of Defendants, as follows.

*Sheriff and Officers*

With respect to these Defendants, Plaintiff alleges additionally, *inter alia,* that the Sheriff "was the administrative branch of Brevard County Florida, and is responsible for running and operating the Brevard County Detention Center, and otherwise responsible for providing medical care to inmates at the Brevard County Detention Center" (Allegation 3).

Plaintiff asserts Section 1983 actions against the Sheriff in his official capacity for failing to adequately staff and train the staff (Count I), and alleges:

> 35. * * *After WILLIAN GAMEZ was found Guilty by a jury, and was incarcerated as a pretrial detainee, PARKER'S agent and employees were provided with knowledge that the deceased WILLIAN GAMEZ had a serious intent to injure, harm, or kill himself, there was a strong likelihood that he would do so, and this direct knowledge of PARKER'S agents and or employees is imputed to Defendant, PARKER, who knew or should have known of WILLIAN GAMEZ'S desire to kill himself while at the Brevard County detention Center during the time leading up to his actually doing so.
>
> * * *
>
> 40. Defendants' deliberate indifference to the serious mental health needs of prisoners in the Brevard County Detention Center has proximately cased the untimely death of WILLIAN GAMEZ. Defendant, PARKER, his agents or employees, knew or should have known that there was a high likelihood that WILLIAN GAMEZ'S [sic] would commit suicide and or injuring [sic] himself, while incarcerated at the Brevard County Detention Center, between May of 2004 [4] and March 21st of 2004 and should have taken action to prevent WILLAIN [sic] GAMEZ from committing suicide. Both the clerk from GAMEZ'S trial as well as GAMEZ'S wife provided the PARKER'S employees, and or agents with direct knowledge of such likelihood.

Although Plaintiff identifies this Count as against Parker, noting "in this Count, Plaintiffs are suing Parker in his official capacity," the wherefore clause of the Count purports to demand

---

[4] The reference to May of 2004 is unexplained. Gamez died the same day he was incarcerated: March 21, 2004.

-8-

judgment against Parker and the individual officers. The Court construes this Count as solely against the Sheriff, in view of the above.

Count II is against Parker for allegedly failing to provide adequate mental health professionals. Count III alleges that Parker failed to properly monitor inmates who have been identified as suicidal. In this Count, Plaintiff adds the following allegations:

> 66. Defendant, PARKER knew or should have known that there was a strong likelihood that a suicide would take place in the Brevard County Detention Center and in particular knew that GAMEZ was likely to attempt suicide. The jail had a history of suicides that were known by PARKER, and/or his employees and/or agents. PARKER had knowledge that there was ultra hazardous materials within the jail cell that had been used for suicides in the past. PARKER had knowledge that there was a suicide problem within the Brevard County Detention Center prior to the suicide death of WILLIAN GAMEZ. With such knowledge PARKER his employees, and/or his agents, disregarded the risk of suicide and failed to take any steps what so ever in the form of training his employees and/or monitoring the inmates in effort to prevent such suicides, and in particular failed to take any steps necessary to monitor and prevent the suicide of WILLIAN GAMEZ even after knowledge that GAMEZ was suicidal.
>
> 67. The risk of suicide was disregarded by the aforementioned staff as WILLIAM GAMEZ was not monitored at all, nor was he checked on by any of the employees or agents of PARKER that worked at the Brevard County Detention Center, nor was any attention or regard given to him after warnings of a suicide risks between the dates of his initial incarceration and his death. The staff at the Brevard County Detention Center, whom are employees and/or agents PARKER, deliberately and willfully failed to monitor WILLIAN GAMEZ after GAMEZ was known to be a suicide risk, such failure, resulting in his death.

Count IV reincorporates the allegations and asserts that Parker created or failed to remedy ultrahazardous conditions at the jail. Count XII [5] is pled against the officers in their official capacity.

With respect to a official capacity claim regarding failure to prevent a suicide, a plaintiff must prove the official policy of the entity sued is to be indifferent to specific risks of suicide,

---

[5]This Count is actually the eighth count of the pleading, but, possibly due to the cut and paste nature of the complaint, is numbered Count XII. For clarity, the Court uses the number Plaintiff has provided.

subjectively known to responsible agents or employees of the entity.  Seldom will a policy of such indifference be expressly stated.  Rather, as recognized in *City of Canton,* 489 U.S. at 390:

> it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policy-makers of the [entity] can reasonably be said to have been indifferent to the need.  In that event, the failure to provide proper training may fairly be said to represent a policy for which the [entity] is responsible, and for which the [entity] may beheld liable if it actually causes injury. [footnotes omitted]

The Court finds that the allegations, construed liberally, are sufficient to state a claim for municipal liability against the Sheriff in his official capacity, under *City of Canton.*  Gamez clearly had a Fourteenth Amendment right to adequate medical care, *McDowell,* 392 F.3d at 1289, fn.8, and  Plaintiff has alleged (albeit inartfully) that the Sheriff had a policy or custom of ignoring medical needs of inmates by failing to adequately staff the Facility and train the staff, failing to properly monitor suicidal inmates,  and by continuing to provide an ultra hazardous environment, despite notice of previous suicides.  Plaintiff has alleged that the execution of these policies led to the constitutional deprivation (the lack of medical care).

Having crossed the first hurdle, Plaintiff still must meet the subjective knowledge requirements set forth in *Cook.*  Although the Court has serious doubts that Plaintiff will be able to establish liability on these sketchy allegations,[6] for present purposes, the Court finds that the

---

[6]

In *Cook,* an inmate who had never threatened or attempted suicide, killed himself shortly after requesting to see a psychiatrist as soon as possible.  The  inmate's estate alleged, as here, that the County had deficient procedures for processing and responding to inmate medical requests and that the County failed to adequately train jail employees in suicide prevention. The district court issued a judgment as a matter of law after presentation of the plaintiff's case and Cook appealed. The Eleventh Circuit held that any deficiencies that may exist in the policies did not rise to the level of deliberate indifference, because Cook had failed to demonstrate that the inmate's suicide was foreseeable *to the Sheriff,* noting:
> Whether the failure of MCDC employees to identify [the inmate] as a suicide risk on May 19-21, 1999 amounts to negligence on their part is a wholly different question  . . . But, no negligence on the part of MCDC employees could alter the fact that the Sheriff-the sole defendant in this § 1983 action-*himself* had no *actual knowledge* that [the inmate] might take his own life.

402 F.3d at 1116 (emphasis added).

allegations that at least one or more officers or employees had actual knowledge of the calls from the wife and clerk and did nothing about them, coupled with the allegations of knowledge of prior suicides at the Facility, are enough to adequately plead that the Sheriff's Office was deliberately indifferent to Plaintiff's risk of suicide. As such, the motion to dismiss the Sheriff should be denied. With respect to the individual Officers, however, as stated above, the claim is duplicative and warrants dismissal.

It is therefore **respectfully recommended** that Doc. No. 63 be **granted, in part and denied, in part** in that Count XII (against the Officers) be **dismissed,** but Counts I, II, III, and IV against the Sheriff be allowed to stand.

*The County*

With respect to the County, in Count V, Plaintiff adds the following pertinent allegations:

> 87. At all times material hereto, the employees, agents and/or correction officers of the Defendant, PARKER, PHS, and CIRCLES OF CARE were acting as agents of Defendant, BREVARD COUNTY, whose knowledge of WILLIAN GAMEZ'S desire to commit suicide is imputed to the COUNTY, all of whom were acting under color of State law and pursuant to the policy, custom and/or usage of BREVARD COUNTY. \*\*\*
>
> 89. Despite this knowledge, either actual or constructive, Defendant, COUNTY, in this cause was deliberately indifferent to, ignored and disregarded the serious mental health care needs of WILIAN GAMEZ while he was incarcerated at the Brevard County Detention Center, which led to or caused the death of WILLIAN GAMEZ. The defendant, COUNTY, has a non-delegable duty to provide medical care to WILLIAN GAMEZ while he was detained at the Brevard County Detention Center. Defendant, COUNTY, also had a duty to provide GAMEZ with a Detention Center that was not grossly overcrowded and full of known ultra hazardous conditions conducive to and used by WILLIAN GAMEZ to commit suicide. Defendant, COUNTY, has created or allowed a policy, custom and/or usage of failing to provide adequate medical care, mental health care, housing and otherwise humane conditions to inmates in the Brevard County Detention Center who were obviously in need of medical attention.
>
> 90. COUNTY, and/or its agents and/or employees created an ultra hazardous condition at the Brevard County Detention Center, knowingly and with indifference, ignored the condition, and failed to protect the inmates within the jail from that ultra

>hazardous condition, including but not limited to WILLIAN GAMEZ, resulting in the death of WILLIAN GAMEZ. In essence, Defendnant,[sic] COUNTY, willfully exposed GAMEZ to a ultrahazardous and inhumane jail known to cause suicides, and to be full of ultrahazardous conditions, and then failing to protect GAMEZ from these known dangers, and as a direct and proximate result causing the death of GAMEZ.
>
>91. Defendant, COUNTY, knew or should have known of WILLIAN GAMEZ'S known desire to commit suicide and injure himself while he was incarcerated at the Brevard County detention Center and knowledge was present that he was a strong suicide risk. Brevard County knew, or should have known, well before the death of GAMEZ that the jail was overcrowded, cells were ultra hazardous, and the jail was not adequately staffed with correctional officers, or mental health professionals, and as a direct result of this policy or practice, GAMEZ died.
>
>\* \* \*
>
>92. The Defendant, BREVARD COUNTY, created and allowed a policy, custom or usage whereby its correction officers failed to notify the medical staff and failed to seek medical treatment for inmates at jail, failed have adequate facilities and failed to follow a Federal Court Order.

To establish municipal liability under Section 1983, as set forth above, Plaintiff must assert that the alleged constitutional violation (in this case, violation of Plaintiff's Fourteenth Amendment rights) resulted from an official policy or custom. *See Cook,* 402 F.3d at 1116. Here, it is alleged that the County "created and allowed a policy, custom or usage whereby its correction officers failed to notify the medical staff and failed to seek medical treatment for inmates at jail, failed have adequate facilities and failed to follow a Federal Court Order." (Allegation 92). However, the SAC makes clear that it is the *Sheriff* who runs the Facility, not the County (Allegation 3).

Rightly or wrongly, it appears that the only relevant official policy of the County is to delegate the operation of the jail to the Sheriff. Vicarious liability does not exist under Section 1983. *Cook,* 402 F.3d at 1115-16. The County can only be held liable if there is a direct causal link between *its own* policy or custom and the alleged constitutional deprivation. *See Snow,* 420 F. 3d at 1271. Here, there is no causal link alleged between the County's policy to delegate the operation

of the Facility to the Sheriff and Gamez's suicide, let alone factual allegations sufficient to support a conclusion that the official policy to delegate *directly* led to Gamez's suicide, and such cannot be inferred.

Even if Plaintiff were to able to state a cause of action under *City of Canton,* the SAC does not meet the *Cook* standard of showing disregard of a known substantial risk of suicide by a particular inmate. There is no doubt that Gamez had a Fourteenth Amendment right to adequate medical care while at the Facility, and that the right includes protection from *known* substantial risks of suicide. There is no allegation, however, that any *County* employee had direct or actual knowledge of a risk of serious harm with respect to this inmate. Rather, Plaintiff seeks to "impute" this knowledge to the County, through the Sheriff (whose own knowledge is not direct, but itself imputed through knowledge of his employees) (*See* Allegation 87 quoted above). As there is no allegation that the County was subjectively aware of a risk with respect to this inmate, it follows that it could not have deliberately disregarded that risk, through conduct that was more than mere negligence. "Absent knowledge of a detainee's suicidal tendencies . . . the failure to prevent suicide has never been held to constitute deliberate indifference." *Cagle v. Sutherland,* 334 F.3d 980,989 (11th Cir. 2003) (internal citations omitted).

It is **respectfully recommended** that the County's motion (Doc. 66) be **granted,** and Count V be **dismissed.**

### *Circles of Care*

Plaintiff sues Circles in Count VII, reincorporating previous allegations and adding:

> 112. Defendant, CIRCLES OF CARE, and Defendant, MIKE HARRIS, an agents [sic] and/or employee of CIRCLES who worked at the jail during all material times relative to this cause of action, as well as other agents and/or employees of CIRCLES had a contract with COUNTY, and PARKER, wherein CIRCLES OF CARE, agreed to provide mental health care and training, to inmates at the jail. Due to its contract, CIRCLES OF CARE, is a state actor for the purposed of 42 U.S.C.

> § 1983, acting under the color of law. Defendant, CIRCLE [sic] OF CARE, had a contract with COUNTY, and PARKER, wherein CIRCLES OF CARE is to provide mental health care training to PARKER'S employees, as well as mental health care to inmates at the jail. CIRCLES OF CARE was also required to provide training to Defendant, PARKER, and COUNTY'S employees, to identify, treat, and otherwise prevent suicides, including that performed by WILLIAN GAMEZ.
>
> 113. Defendant, CIRCLES OF CARE, through its agents and/or employees and Defendant, AMY DIAMOND, has failed to provide adequate mental health care to GAMEZ, and or medical care to inmates at the Brevard County Detention Center. Defendants, CIRCLE OF CARE, and AMY DIAMOND failed to properly train Defendant, PARKER'S employees and/or agents, to identify and prevent inmates from committing suicide. The pervasive and ongoing problems with the care provided to inmates by CIRCLES OF CARE, and AMY DIAMOND, and their failure to stop WILLIAN GAMEZ from his known suicidal desires, when their was a strong likelihood that he would commit such suicide, constitute reckless indifference, and shows that Defendants, CIRCLES OF CARE, and AMY DIAMOND, violated WILLIAN GAMEZ'S substantive civil rights, protected by the Fourteenth Amendment of the United States Constitution, and furthermore, CIRCLES has a policy or practice of violating the civil rights of individuals at the Brevard County Detention Center, and specifically WILLIAN GAMEZ'S rights. Defendants, CIRCLE OF CARE, and AMY DIAMOND also had a policy or practice of failing to train its employees, and the PARKER and PARKERS employees, as required per contract, to identify, monitor, and otherwise treat inmates such as WILLIAN GAMEZ, who are known suicide risks. All of this conduct caused WILLIAN GAMEZ'S substantive rights protected under the Fourteenth Amendment of the Constitution to be violated.
>
> 114. As a direct, proximate, and foreseeable result of the violations of the Fourteenth Amendments and the misconduct of Defendant, CIRCLES OF CARE, and AMY DIAMOND, and/or any its agents for the conduct as set forth above, WILLIAN A. GAMEZ suffered injuries which caused his death. * * *
>
> 116. The Plaintiffs are also seeking damages against Defendant, CIRCLES OF CARE, and AMY DIAMOND,[7] because the conduct set forth above constitutes deliberate indifference, willful conduct and intentional conduct towards the public in general and specifically WILLIAN A. GAMEZ and this conduct caused injuries which caused his death by hanging on or about March 21, 2004.

Plaintiff fails to plead facts sufficient to support a claim of deliberate indifference, with

respect to Circles. As referred to earlier, the SAC is inordinately vague about the sequence of

---

[7] As with the prior Complaint, Amy Diamond's role in this case is unexplained. Moreover, she is not named as a Defendant in the case style nor in the "Parties" section of the SAC.

events on the day of the suicide. Although Plaintiff asserts that Mike Harris, an "agent and/or employee" of Circles had knowledge of the alleged phone call placed by the clerk (the details of which are also vague), this bare allegation, without more, does not equate to direct knowledge of a risk of serious harm. This is especially so, given that there is no allegation that Harris received the call directly. Thus, at best, it can be inferred that he received (at some unstated time) a report of the telephone call, from some other person. Such third hand, hearsay information hardly translates to actual knowledge of a known foreseeable likelihood of suicide, especially where there was no such indication from Gamez himself that he was contemplating suicide, and there is no allegation of a history of suicide risk, psychiatric difficulties or prior attempts.[8] Moreover, Plaintiff does not explain how this alleged failure to render mental health treatment amounts to more than mere negligence, especially given the short time frame between the alleged phone call and the suicide.

It is **respectfully recommended** that Circles' motion (Doc. 64) be **granted,** and that Count VII be **dismissed.**

*PHS*

With respect to PHS, Plaintiff adds the following pertinent allegations in Count VI:

> 105. Defendant, PHS, through its agents has a contract with Brevard County, and PARKER, wherein PHS is to provide mental health care training and suicide prevention training to PARKER and his employees and/or agents and medical care to inmates at the Jail. PHS was also required to provide training to Defendant, PARKER, and COUNTY'S employees and/or agents working at the Jail, to identify, treat, and otherwise prevent suicides. Due to its contract with COUNTY and PARKER, PHS is a state actor for the purpose of 42 U.S.C. § 1983.

---

[8] By contrast, the claim against the Sheriff includes allegations that his Officers or employees not only had first hand knowledge of the clerk's phone call, but also the phone call allegedly placed by Mrs. Gamez to the Facility, and of the prior suicides at the Facility.

106. Defendant, PHS, and the agents of Defendant, COUNTY, and PARKER, were informed that WILLIAN GAMEZ had a desire to kill himself and there was a strong likelihood that he would do so before he committed suicide. The knowledge of the employees of PHS, COUNTY, and SHERIFF, is imputed to PHS and the other Defendants.

107. Defendant, PHS, through its agents and/or employees has failed to provide adequate mental health care, to GAMEZ and or medical care to inmates at the Brevard County Detention Center. Defendant, PHS failed to properly train Defendant, PARKER, and/or PARKER'S agents and/or employees to identify and prevent inmates from committing suicide, including WILLIAN GAMEZ. The pervasive and ongoing problems with the care provided to inmates by PHS, the training provided by PHS, and failure to stop WILLIAN GAMEZ from his known suicidal desires, countless reckless indifferences, and shows that PHS has a policy and practice of violating the civil rights of individuals at the jail, and specifically, the rights of WILLIAN GAMEZ. PHS also had a policy or practice of failing to train its employees, and PARKER'S employees, as required by contract, to identify, monitor and otherwise treat inmates such as WILLIAN GAMEZ, who are known suicide risks. All of this conduct caused GAMEZ'S substantive rights protected by the Fourteenth Amendment of the United States Constitution to be violated as well as causing him suffering and death.

108. As a direct and proximate and foreseeable result of the aforementioned defendant's violations of GAMEZ'S substantive rights under the Fourteenth Amendment of the United States Constitution and the misconduct of Defendant, PHS, and or its agents as set forth above, WILLIAN A. GAMEZ suffered injuries which caused his death. Specifically, Defendant, PHS, has failed to properly diagnose and identify those individuals with mental health problems, failed to train jail employees as required by contract, and failed to identify, monitor, and otherwise treat inmates such as WILLIAN GAMEZ, who are known suicide risks, and failed to prevent such suicides.

As above, these allegations are insufficient to state a cause of action against PHS as a matter of law. Notably, PHS is not alleged to have *any* direct knowledge of known suicide risk with respect to Plaintiff. No PHS employee was alleged to have taken the phone call or to have received actual knowledge of the call. Indeed, Plaintiff alleges that knowledge should be imputed to PHS, due solely to its contractual relationship with other entities. As there is no *respondeat superior* or vicarious liability in Section 1983 cases, the absence of direct, actual knowledge of a likely suicide

-16-

risk defeats the claim. Moreover, as PHS did not have actual knowledge, it could not have disregarded that knowledge, by conduct that was more than mere negligence.[9]

It is **respectfully recommended** that PHS' motion (Doc. 65) be **granted,** and Count VI be **dismissed.**

### *Whether Plaintiff Should Be Granted Leave to Amend*

In response to all of the motions, Plaintiff argues, in essence, that these Defendants are all liable as Gamez died while in their care and custody. Such strict liability is not the law in this circuit, however. "The law on one point is clear: 'A prison custodian is not the guarantor of a prisoner's safety.'" *Cagle v. Sutherland,* 334 F.3d 980, 989 (11th Cir. 2003) (internal citation omitted). Here, Gamez killed himself on the very day he arrived at the Facility, some unspecified time (but obviously shortly) after a jail employee received a telephone call from a court clerk informing the employee that she believed he would harm himself. At some other unspecified time, Gamez's wife was alleged to have spoken with some unidentified employee sharing her belief, as well. The factual basis for these beliefs (if any) is not pled.

By contrast, Plaintiff does not allege that Gamez was ever identified by any medical or otherwise trained professional as being at-risk for suicide; that he ever voiced his intentions to harm himself to anyone at the Facility; that he ever sought to speak to a counselor or physician at the Facility, or sought help from a guard or other inmate; or that he presented with a known psychiatric history or previous suicidal attempts. As noted by another court in this circuit:

> The only circumstance recognized as providing a sufficiently strong likelihood of an imminent suicide attempt is a prior attempt or threat. "In the absence of a previous threat of or an earlier attempt at suicide, we know of no federal court in the

---

[9] Interestingly, Plaintiff alleges that PHS failed to "properly diagnose and identify" individuals with mental health problems, such as Gamez. This is a classic allegation of negligence and belies any claim of deliberate indifference to a known suicidal inmate.

-17-

>nation or any other court within this circuit that has concluded that official conduct in failing to prevent a suicide constitutes deliberate indifference." *Edwards v. Gilbert*, 867 F.2d 1271, 1275 (11th Cir.1989).

*Holland v. City of Atmore*,168 F.Supp.2d 1303, 1311 (S.D. Ala. 2001) *affirmed*, 37 Fed.Appx. 505 (11th Cir. 2002 unpublished).

With the exception of the Sheriff, whose employees apparently received the telephone calls, there is no allegation that any of the other Defendants had actual, subjective knowledge that Gamez had made a prior attempt or had threatened to commit suicide. Plaintiff has pled, at best, only the mere opportunity for suicide and such opportunity, without more, is insufficient as a matter of law to impose liability on those charged with the care of prisoners. *Cook,* 402 F.3d at 1115, *citing Cagle,* 334 F.3d at 986 (itself quoting *Tittle v. Jefferson County Comm'n,* 10 F. 3d 1535, 1540 (11th Cir. 1994)). As Plaintiff can prove no set of circumstances in which these facts can support a Section 1983 action against the County, PHS or Circles, it is **respectfully recommended** that their motions be granted and that the case against them be **dismissed, without further leave to amend. The case should go forward solely on the claims against the Sheriff in his official capacity.**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on May 11, 2007.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Courtroom Deputy